In the Matter of the Appraisal, under the Transfer Tax Law, of the Estate of HETTY H. R. GREEN, Deceased.

THE COMPTROLLER OF THE STATE OF NEW YORK, Appellant; EDWARD H. R. GREEN, as Executor, etc., of HETTY H. R. GREEN, Deceased, Respondent.

First Department, July 11, 1918.

Tax — transfer tax on estate of non-resident — lending of money may constitute doing business within the State — proceeding remitted to appraiser — evidence — inquiry by comptroller as to nature of decedent's business.

Where a non-resident before her death was engaged regularly and habitually in the practice of loaning money in this State she was doing business in this State within the purview of the Tax Law relating to taxes upon transfers.

Evidence in a proceeding to impose a transfer tax upon property of a deceased non-resident examined, and *held*, insufficient to enable the court to determine whether the decedent, by investing her surplus income in this State, was doing business here, or whether she was engaged in the business of lending money in this State, and that the report should be remitted to an appraiser to ascertain the amount of capital invested by the decedent in this State and whether she had been doing business here.

Under the Tax Law as amended the surrogate should not prevent the Comptroller from proving facts tending to show that a non-resident decedent was doing business in this State, within the meaning of the statute, for the policy of the court should be one of encouragement and not one of repression.

APPEAL by the Comptroller of the State of New York from an order of the Surrogate's Court of the county of New York, entered in the office of said Surrogate's Court on the 21st day of December, 1917, on appeal from a prior order fixing the transfer tax herein, with notice of intention to bring up for review the intermediate order entered on the 23d day of April, 1917, adjudging that the decedent was a non-resident, and remitting the report to the appraiser for taxation, together with the proceedings on appeal therefrom and in said Surrogate's Court.

*John B. Gleason* of counsel [*Lafayette B. Gleason*, attorney], for the appellant.

*Charles W. Pierson* of counsel [*Alexander & Green*, attorneys], for the respondent.

SHEARN, J.:

The surrogate having adjudged that decedent died a non-resident of the State of New York (*Matter of Green*, 99 Misc. Rep. 582), and his decision having been affirmed by this court and leave to appeal to the Court of Appeals having been denied (179 App. Div. 890, 928), the matter was remitted to the appraiser to proceed accordingly. Section 220 of chapter 62 of the Laws of 1909, being the Tax Law (Consol. Laws, chap. 60), as amended by the Laws of 1916, chapter 323, section 83, in effect April 26, 1916, relating to taxable transfers, imposes a tax " when the transfer is by will or intestate law of capital invested in business in the State by a non-resident of the State doing business in the State either as principal or partner." On April 21, 1916, Mrs. Green, the decedent, suffered a paralytic stroke, took to her bed and died on July 3, 1916. At the time of her death, and long prior thereto, Mrs. Green had a large capital invested in this State. Accordingly, on the inquisition before the appraiser, the Comptroller endeavored to ascertain whether after the taking effect of the amendment the decedent was doing business in the State either as principal or partner. By a series of rulings of the appraiser, testimony as to specific amounts of decedent's capital invested in the State and as to specific transactions and the number and extent of her transactions was excluded, over the exception of counsel for the Comptroller, and despite his statement that the purpose of the inquiry was to show " what business activities, if any, she carried on within the City of New York." The order appealed from affirms the final order entered upon the report of the appraiser, appraising the value of the estate of decedent as a non-resident at $2,247,571.60, and fixing the amount of the tax thereon at $81,498.89, excluding from taxation as such any capital invested in business in the State of New York, the learned surrogate having sustained the rulings of the appraiser excluding testimony designed to show that the decedent was doing business in the State.

Upon the former hearing, resulting in a decision that the decedent was domiciled in Vermont, her son and executor, in fortifying this claim and in explanation of the decedent's frequent presence in the city of New York, claimed and

First Department, July, 1918.                [Vol. 184.

asserted the decedent was here solely to transact business, and testified: "My mother was nothing but business, business, business." As to the decedent's presence and business activities here, the executor also made a formal concession: "It is conceded by counsel for the executor, for the purposes of this proceeding only, as follows: From the date of the death of the decedent's husband in 1902 * * * to the time of her own death, the City of New York was the center of the decedent's business activities and while staying at Hoboken she would ordinarily come to New York City in the daytime to transact her business. During most of this period she had one or more safe deposit boxes in New York City in which from time to time she placed important documents and securities owned by her. She constantly kept large deposits of cash in New York banks. The decedent's interests were largely centered upon the conservation and enlargement of her fortune, and practically her entire time and attention was given to business matters and to the investment and reinvestment of her principal and income."

Having, in order to support the claim of Vermont domicile, employed the fact that decedent's presence in New York was due solely to her business interests and activities, the executor claimed upon the second hearing, in order to avoid the imposition of a tax upon capital invested, that the decedent was not doing business here within the meaning of the statute but merely made occasional investments here of her surplus income.

Concerning the decedent's business activities, her son, the executor, testified: "Mrs. Green's business activities consisted in the investing and re-investing of her principal and income and the care and conservation of her investments. Her investments were made for the most part in bonds secured by mortgage and in other interest bearing or dividend paying securities. She never speculated or bought to sell. She exercised extreme care and caution in making her investments and what she bought she ordinarily retained. Her surplus income sometimes accumulated faster than permanent investments to her liking were found. At such times a bank in which her money was deposited would transfer to her loans on collateral made by the bank in the bank's name, but such

loans were always time loans and were held by her as investments. She never loaned money on call or in the ' Street.' She did not deal with the public or hold herself out to the public as having money to lend. She maintained no office and had no office force. She had no particular fund employed in or set apart for lending. Such loans as she took were paid for out of her current bank balance, which ordinarily consisted, in part at least, of accumulated income." It further appeared that in 1911 Mrs. Green's health began to fail and in order, as the executor testified, " to relieve her of care and enable me to handle active investments and matters requiring the signing of papers," the Westminster Company was incorporated under the laws of New Jersey with an authorized capital of $125,000. This company was controlled by Mrs. Green. At the time of her death its stockholders were: Hetty H. R. Green, 630 shares; Edward H. R. Green, 600 shares; J. H. Isbills, 10 shares, and W. K. Potter, 10 shares. Concerning the relations between this company and the decedent and the manner in which Mrs. Green's business was conducted either through it or in connection with it, the executor testified: " The company took over from Mrs. Green many of her investments of various kinds, including the loans on collateral held by her. Thereafter when she had money to invest the investments would ordinarily be made by me as president of the Westminster Company and taken in the company's name, and the amount paid would be debited to the company on her books and credited to her account on the company's books. The company did not loan money on call or in the ' Street.' From time to time as its bank balances increased faster than permanent investments were found it took over loans on collateral made by banks as Mrs. Green had previously done, but such loans were always time loans and were held by the company as investments. The company did not deal with the public or hold itself out to the public as having money to lend. The company had no particular fund employed in or set apart for lending. The company did not act as agent for Mrs. Green. Securities and other properties taken over from her were assigned or transferred into the company's name and the cost thereof, together with all moneys received from her, were

debited to the company on her books and credited to her on the company's books among accounts payable and were treated as an indebtedness of the company to her. The income from investments held by the company was treated as belonging to the company and from time to time dividends were declared and paid therefrom to the stockholders." It seems quite clear that this method of doing business constituted either investments by Mrs. Green in the Westminster Company or loans of money by her to that company. It is unnecessary to determine upon this appeal whether continuous investment and reinvestment as one's sole occupation and for the purpose of making money constitutes doing business, for it is quite evident, and it is not disputed, that engaging regularly, and so frequently and habitually as to constitute a course of dealing, in the practice of loaning money, would constitute doing business. The evidence taken before the appraiser is insufficient to determine whether Mrs. Green was merely making investments of surplus income from time to time, and, if so, whether this was done in such a manner, in such volume, and so regularly and frequently as to present the question whether the course of dealing constituted doing business; or, on the other hand, whether she was engaged in the business of money lending. That is the reason why the Comptroller wished to develop the facts in greater detail. The propriety and necessity of a thorough inquisition to disclose the true state of facts are readily apparent, for there appears to be no doubt that the same method was followed after the enactment of the amendment and up to the time of Mrs. Green's death that was followed for some years prior thereto. Some of the inquiries of counsel for the Comptroller which were excluded by the learned surrogate were not entirely appropriate to develop the facts necessary to enable the court to determine whether the decedent was doing business within the meaning of the statute, but others were directed to this end and there was a substantial refusal to permit a thorough disclosure of the facts. Such an inquisition should not be made oppressive or vexatious but, being prosecuted in good faith, should be sanctioned in so far as it tends to develop relevant facts. This amendment of the statute may result in an enormous gain for the State in taxable property

and save for the State great sums in taxes which have hitherto been lost by the practice of persons who, having great fortunes invested as capital in this State, escape their just share of taxation for the protection that the State affords to their capital by maintaining a domicile in some other State. Respecting the inquisition which the law authorizes the Comptroller to make in order to determine whether the estate of a decedent is subject to taxation, the policy of the court should be one of encouragement and not of repression.

The order appealed from should be reversed and the taxing order modified by directing that the report be remitted to an appraiser for the purpose of ascertaining the amount of capital invested by the decedent in the State and whether the decedent was doing business in the State, with costs to appellant.

CLARKE, P. J., LAUGHLIN, DOWLING and MERRELL, JJ., concurred.

Order reversed, with costs, and order of September 6, 1917, modified as stated in opinion.